UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD ROGEL, Individually and
as Trustee of the Richard H. Rogel
Revocable Living Trust,

       Plaintiff,                                Case No. 06-10183

v.                                            District Judge Paul V. Gadola
                                               Magistrate Judge R. Steven Whalen
MAX DUBRINSKY, Individually and as
Trustee of the Max Dubrinsky Living
Trust, et al.,

       Defendant.
_____/

**REPORT AND RECOMMENDATION**

     Before the Court are Defendants' Motion for Summary Judgment [Docket #4] and Plaintiff's Motion for Summary Judgment [Docket #6], which have been referred for Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons that follow, I recommend that Plaintiff's Motion for Summary Judgment [Docket #6] be GRANTED and that Defendants' Motion for Summary Judgment [Docket #4] be DENIED.

**I.   FACTS**

     Plaintiff Richard Rogel appears both individually and as trustee of the Richard H. Rogel Revocable Living Trust. Defendant Max Dubrinsky is named both individually and as trustee of the Max Dubrinsky Living Trust. Defendant Frederic I Keywell is named both individually and as trustee of the Frederic I. Keywell Revocable Trust.

     Apart from the Trusts, three separate legal entities were formed: Rogel Hotel, L.L.C. (the "Rogel Entity"); the Dubrinsky Group Limited Partnership (the "Dubrinsky Entity"); and

the Keywell Group Limited Partnership (the "Keywell Entity").  On or about May 30, 1997, these three entities formed a limited liability corporation designated the Executive Hotel Group, L.L.C., and signed a contract titled Operating Agreement of Executive Hotel Group, L.L.C.  Neither the Trusts nor the individual parties to this lawsuit were signatories of the Executive Hotel Group's Operating Agreement.  The only three signatories were the Rogel, Dubrinsky and Keywell Entities.[1]

The Executive Hotel Group obtained a line of credit from Comerica Bank, pursuant to a loan agreement signed in 1997.  The loan was guaranteed by the Plaintiff (individually and in his capacity as trustee of the Rogel Trust) and the Defendants (individually and in their capacity as trustees of the Dubrinsky and Keywell Trusts, respectively).[2]  Pursuant to the guarantees, Plaintiff Rogel paid a total of $4 million in 1995, when Executive failed to make timely payments.  Defendants paid nothing.  Plaintiff has filed a Complaint seeking 1/3 contribution from each Defendant, pursuant to Michigan law.[3]

## II.   STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c).  To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990).  Drawing all

---

[1] The Operating Agreement is attached as Exhibit A to Defendants' Motion for Summary Judgment.

[2] The signed guarantees are attached as Exhibits A, B and C to Plaintiff's Motion for Summary Judgment.

[3] This Court has diversity jurisdiction under 28 U.S.C. §1332.

reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).  The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added).  If, after sufficient opportunity for discovery, the non-moving party cannot meet that burden, summary judgment is clearly proper. *Celotex Corp.*, 477 U.S. at 322-23.

### III.   ANALYSIS

Defendants move for summary judgment on the basis of the Operating Agreement of Executive Hotel Group, L.L.C., specifically §2.3(c)(ii), which purports to treat a voluntary contribution by one party to the agreement as a loan to the other parties, with no other

remedy available. They argue that (1) Michigan law does not recognize the remedy of contribution by joint debtors or guarantors, and (2) even if it did, any such right would be superseded by the terms of the Operating Agreement.

Plaintiff argues that the guarantors of the loan–himself and the Defendants, both as individuals and trustees–were not signatories or parties to the Operating Agreement, and are therefore not limited by its terms.[4]

### A. The Right of Contribution

Both Plaintiff and Defendants cite *Comstock v. Potter*, 191 Mich. 629, 158 N.W. 102 (1916), acknowledging that the Supreme Court in that case upheld the equitable right of a co-maker of a note to contribution from his co-makers, to the extent that he paid more than his pro rata share of the debt. The Court in *Comstock* held:

> "[W]here there are two or more sureties for the same principal debtor, and for the same debtor obligation, whether on the same or on different instruments, and one of them has actually paid or satisfied more than his proportionate share of the debt or obligation, he is entitled to contribution from each and all of his co-sureties, in order to reimburse him for the excess paid over his share, and thus to equalize their common burden.. The same doctrine applies, and the same remedy is given between all of those who are jointly or jointly and separately liable on contract or obligation in the nature of contract." *Id.* At 638 (citing 4 *Poneroy's Equity Jurisprudence*, §1418 (3rd Ed.)).

Nevertheless, Defendants argue that this common law equitable right of contribution is "unsettled," citing *Reurink Brothers Star Silo, Inc. v. Clinton County Road Commissioners*, 161 Mich.App. 67, 409 N.W.2d 725 (1987) and *Isabella County v. Michigan*, 181 Mich.App. 99, 449 N.W.2d 111 (1989), as casting doubt on the continued vitality of *Comstock*. This argument is without merit. *Reurink* and *Isabella County* both involved joint *tortfeasors*, not

---

[4] Plaintiff also argues that even if the parties to this suit were subject to Operating Agreement, the contract does not preclude judicial remedies because there was no "capital call" as set forth in §2.3(b)(ii). Because I agree that neither the Plaintiff nor the Defendants are parties to the Operating Agreement, it is not necessary to address the question of whether §2.3(b)(ii) is applicable.

co-sureties or co-guarantors, and were based on a statute specific to contribution for tort claims. *See* M.C.L. §600.2925a. Neither case discussed *Comstock* because the common law rule discussed in *Comstock* was unaffected by the Michigan tort-based statute. The Supreme Court's decision in *Comstock* remains good law as applied to co-guarantors. *See Dolinka VanNoord & Co. V. Oppenheimer & Co.*, 891 F.Supp. 1244, 1249 (W.D. Mich. 1995)("a common law right of contribution exists in Michigan").

### B. The Effect of the Contract

In its summary judgment motion, Defendants argued for the strict application of contractually negotiated Operating Agreement of the Executive Hotel Group, which it claimed precluded the judicial remedies sought here. The Plaintiff filed a response noting that neither he nor the Defendants, individually or in their capacity as trustees, were signatories to that Agreement. Rather, the Executive Hotel Group, L.L.C., was formed by three legally distinct entities referred to at the Rogel Entity, the Dubrinsky Entity and the Keywell Entity. Defendants now acknowledge that although they signed the loan guarantees, they were not nominal parties to the Operating Agreement. However, they contend that there is a "community of interest" between the members the Executive Hotel Group and the guarantors, and therefore the Court should "pierce the corporate veil" and "disregard the business entities in order to meet the purpose of justice." *Defendants' Response to Plaintiff's Motion for Summary Judgment*, 8-9.

"Piercing the corporate veil" is an equitable remedy generally used to attach liability to shareholders or individuals where the corporate form has been abused. *Klager v. Robert Meyer Co.*, 415 Mich. 402, 411-12, 329 N.W.2d 721 (1982). In *Kline v. Kline*, 104 Mich.App. 700, 702, 305 N.W.2d 297 (1981), the Court stated:

> Generally, the law treats a corporation as an entirely separate entity from its stockholders, even where one person owns all of the corporation's stock.

> Bourne v. Muskegon Circuit Judge, 327 Mich. 175, 191, 41 N.W.2d 515 (1950). Complete identity of interest between sole shareholder and corporation may lead courts to treat them as one for certain purposes. Williams v. America Title Ins. Co., 83 Mich.App. 686, 269 N.W.2d 481 (1978). Where the corporation is a mere agent or instrumentality of its shareholders or a device to avoid legal obligations, the corporate entity may be ignored. People ex rel. Attorney General v. Michigan Bell Telephone Co., 246 Mich. 198, 205, 224 N.W. 438 (1929). A court may look through the veil of corporate structure to avoid fraud or injustice. Schusterman v. Employment Security Comm., 336 Mich. 246, 57 N.W.2d 869 (1953). The community of interest between corporation and shareholders may be so great that, to meet the purposes of justice, they should be considered as one and the same. L. A. Walden & Co. v. Consolidated Underwriters, 316 Mich. 341, 346, 25 N.W.2d 248 (1946). When the notion of a corporation as a legal entity is used to defeat public convenience, justify a wrong, protect fraud or defend crime, that notion must be set aside and the corporation treated as the individuals who own it. Paul v. University Motor Sales Co., 283 Mich. 587, 602, 278 N.W. 714 (1938). The fiction of a corporate entity different from the stockholders themselves was introduced for convenience and to serve the ends of justice, but when it is invoked to subvert the ends of justice it should be and is disregarded by the courts. Paul, supra. A court's treatment of a corporate entity clearly rests on notions of equity, whether it is an action at law or at equity. Each case involving disregard of the corporate entity rests on its own special facts. Brown Brothers Equipment Co. v. State Highway Comm., 51 Mich.App. 448, 215 N.W.2d 591 (1974)."

Michigan courts have established three requirements for piercing the corporate veil: "[f]irst, the corporate entity must be a mere instrumentality of another entity or individual. Second, the corporate entity must be used to commit a fraud or wrong. Third, there must have been an unjust loss or injury to the plaintiff." *Nogueras v. Maisel & Assoc. of Michigan,* 142 Mich.App 71, 86; 369 NW2d 492 (1985).

In the present case, the Plaintiff and the Defendants chose to establish distinct business entities (the Rogel, Dubrinsky and Keywell Entities) that in turn formed a limited liability corporation to build hotels. The corporate separation of these entities from the individuals and the trusts, and thus the insulation from liability that the trusts enjoyed, was presumably beneficial to all parties, and completely justifiable from both a business and a legal viewpoint. When the Executive Hotel Group sought a line of credit, Comerica Bank,

recognizing that Plaintiff and Defendants were otherwise shielded from liability, required personal guarantees.

Under these facts, none of the *Nogueras* factors for piercing the corporate veil is present. First, the corporate entity (Executive Hotel) is not acting as the instrumentality of the individual parties to this suit. It was precisely because of their distinct legal status from the L.L.C., that Comerica sought the parties' personal guarantees. Second, no fraud, crime or wrong has been committed. The debt to Comerica is not being avoided. Finally, there is no unjust injury to the Defendants. They signed the guarantees, and they owe the money. Even if the Operating Agreement were applicable, they would still owe the money, albeit as a five-year loan.

Far from seeking to avoid an obligation, *see Kline, supra*, Plaintiff repaid $4 million to Comerica upon Executive Hotel's default. While the Defendants contend that it is necessary to disregard the business entities in order to *avoid* an injustice, they in effect seek to circumvent an agreed-upon corporate structure in order to *create* an injustice by denying contribution to the Plaintiff. The purposes of justice and fairness will be met not by "piercing the corporate veil," but rather by applying the equitable principles of contribution.

There is no dispute as to the underlying facts of this case. All parties agree that the Plaintiff repaid $4 million to Comerica, and that the signatories to the Operating Agreement were separate entities from the guarantors. The Operating Agreement and the guarantees speak for themselves. Having found as a matter of law that an equitable right of contribution exists in Michigan, and that there is no sound equitable principle that would justify subjecting the parties to any limitations set forth in the Operating Agreement, I conclude that the Plaintiff is entitled to a summary judgment that directs a proportional contribution from each Defendant.

### IV.   CONCLUSION

Accordingly, I recommend that Plaintiff's Motion for Summary Judgment [Docket #6] be GRANTED and that Defendants' Motion for Summary Judgment [Docket #4] be DENIED.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

S/R.  Steven Whalen
R.  STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated:  September 5, 2006

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys

and/or parties of record by electronic means or U.S. Mail on September 5, 2006.

                                                    S/Gina Wilson
                                                    Judicial Assistant